WILLIAM PECKHAM and Wife v. JOSEPH A. BARKER and others.

A court of equity will not specifically enforce a parol contract, for the lease of a farm, upon the ground of part performance, unless, at the time of filing the bill, the contract alleged is a subsisting contract, in full force, not abandoned or rescinded; nor will it allow the complainants, where the bill states that the contract was entered into in 1842, to amend the bill by setting forth in it a modification of the contract by both parties in 1852, and that the same was obligatory upon the defendants in 1860, when such facts are not only contradicted by the answers, and all the testimony adduced, upon two trials, on the part of the defendants, but are also inconsistent with the repeated acts and admissions of the principal plaintiff.

In order to avail as part performance of such a contract, the improvements alleged must be of a permanent nature, or of great value, and the possession taken and retained must be consistent only, with the contract for a lease sought to be enforced.

THIS Bill in Equity is brought by William Peckham and Ann, his wife, for themselves and such of the presumptive heirs of Cyrus Barker as may become parties to it, against Joseph A. Barker and Cyrus Barker. One purpose of the bill is, to set aside certain deeds, claimed to have been fraudulently procured by the defendants, of the plaintiffs, with a view of divesting and defrauding the plaintiffs of their interest in a certain farm in Newport, commonly called the Paradise Farm, which is the subject of this suit. The main purpose of the bill, however, is to enforce the specific performance of a verbal lease, which the plaintiffs allege they entered into with the defendants, in 1842, by virtue of which they, the plaintiffs, took possession of this farm and made improvements thereon, and under which lease they claim the right to retain possession until the death of the defendant, Cyrus Barker, or until the farm shall have been sold. The defendants deny the existence of any such lease or contract.

Two trials, under issues settled by the court, of the questions of fact raised by the bill, having been already had;—at the last

term of the court the plaintiffs moved to amend the bill, with a view of meeting more nearly the state of the proof, as developed at the former hearings of the cause. At the same term, the defendants, having heretofore recovered judgment at law, for possession of the demised premises, *move* that execution for possession, heretofore stayed by this court, may issue upon their judgment; and also, that the plaintiffs' bill may be dismissed, for want of equity.

Such other facts as are connected with the questions determined by the court, appear in the opinion.

*Peckham, with whom was Payne, for the complainants.*

*Mathewson, for the defendants,* cited Gresley's Ev. 243; Hill on Trustees, 463; 2 Story Eq. Juris. §§ 742, 759, 761–769; 1 Lead. Cas. in Eq. (Hare & Wallace's notes,) 639, 722, 723, 727, 731, 735, 740, 741, 745, 3d Am. Ed.; 2 Ib. 427, 669, 695.

BULLOCK, J.    The plaintiffs move to amend their bill, by adding on the third page, after the words, "entered upon the possession of the said premises," the following: "saving and reserving therefrom, for the use of the said Cyrus Barker, the east small garden on said farm"; and also, on the fourth page of the bill, after the words, "an annual rent of $100," to add: "And the complainants aver, that after the said contract was made, and after the said William Peckham had entered upon the possession of the premises under the said contract as aforesaid, and had made the improvements thereon, as herein before alleged, to wit, in the spring of A. D. 1852, the said Cyrus Barker, having then removed from the said Paradise Farm to the city of Providence, and having ceased to use the said east small garden, and in consideration thereof, requested the said William Peckham to pay twenty-five dollars per annum for the said premises, including the said east small garden, thereafter; to which the said Peckham then and there agreed, but without any intention, on the part of the said Cyrus Barker, or of the said William Peckham, to abandon or to release either party from the obligations of the original contract, under and by virtue of which the said William Peckham had entered into the possession of the premises, and made the improvements aforesaid"; and

also, to modify the first, and frame a new and fourth issue, for the purpose of bringing before the court and jury the new matter, embraced in the proposed amendments.

The bill would then state, substantially, that in October, 1842, William Peckham, at the request of J. A. Barker, and with the assent of Cyrus Barker and of his presumptive heirs, took possession of all of the "Paradise Farm," so called, except the east small garden, which was reserved for Cyrus Barker, under a verbal lease made with J. A. Barker, and for the life of Cyrus Barker, or until the said farm was sold, and at the annual rent of $100 ; and that afterwards, and in the spring of 1852, Cyrus Barker, having ceased to use the east small garden, in consideration that William Peckham was to have the use thereof, he, William Peckham, was to pay $25 per year additional rent; but that this last named agreement was made, without any intention on the part of Cyrus Barker, or William Peckham, to abandon the original contract under which William Peckham entered upon the possession of the premises originally leased, and made the improvements thereupon.

The answers of both of the principal defendants, Joseph A. and Cyrus Barker, expressly deny the making of the agreement set forth in the original bill, as well as the agreement proposed to be set forth by way of amendment. The answer of Joseph A. Barker states, that the plaintiff, William Peckham, in the fall of 1842, took possession of the premises, the same being the "Paradise Farm," so called, for the term of one year from the 25th day of March, 1843, at the annual rent of $100, and for such longer term, and for such rent, as William Peckham and Joseph A. Barker should thereafter agree upon, and under no other contract or agreement whatever ; that this tenancy was renewed upon the like terms, from year to year, until about 1853, when the tenancy was further renewed for one year, at a rent of $125 ; and for the year 1854, at the same rent; and also again for the year 1855, ending on the 25th day of March, 1856 ; which increased rent William Peckham paid. And that in the fall of 1855, the defendant, Joseph A. Barker, notified the plaintiff, William Peckham, to quit the premises when the

then current rental year should expire; but that on or about the 1st day of April, 1856, the plaintiff, William Peckham, hired the premises for a further term of one year, from the 25th day of March, 1856, and at an annual rent of $150, unless the premises should, in the mean time, be sold; in which case the plaintiff, William Peckham, was at once to vacate the buildings, if the purchaser desired possession, and the land when the crops were gathered in; and was to be allowed, for the unexpired term, a deduction at the rate of $50 per year, and was also to be allowed a further sum of $50 for his hot-house, if left upon the premises in good order; and that the plaintiff, William Peckham, by this lease, further agreed to keep up and maintain the walls and fences, and to leave as much manure on the farm as he found there. The answer of Joseph A. further sets forth, that this last named agreement was renewed for the year ending the 25th day of March, 1858, and again for the year ending on the 25th day of March, 1859, and that for each of these three last named years, the plaintiff, William Peckham, paid the further increased rent of $150.

The answer of this defendant, Joseph A., further states, that he duly notified the plaintiff, William Peckham, that the rent for the year ending on the 25th day of March, 1860, would be $175; and that the plaintiff, William Peckham, did not dissent to it; but when the rent became due, paid a sum equal to the rent of the previous year, and refused to pay a larger amount.

The presumptive heirs of Cyrus Barker, with the exception of the co-plaintiff, Ann S. Peckham, the wife of William Peckham, deny giving their assent to any such contract as is set forth in the original bill, or as is proposed to be set forth in the bill, if amended.

The plaintiff, William Peckham, refusing to pay the rent demanded, the defendant, Joseph A. Barker, institutes proceedings at law, and recovers judgment for possession of the demised premises in the month of April, 1860. The plaintiffs then, in the same month, and for the first time, filed their bill, setting up the alleged contract of 1842.

The cause came to an issue, at the February term of this court, A. D. 1861. There have been two hearings before a jury, upon issues of fact, framed under the direction of the court, in accordance with the statute. All the evidence, oral and written, of both parties, has been submitted to the full court upon a motion for a new trial, and again upon this motion. In our judgment, the testimony introduced on the part of the plaintiffs, does not overcome the answers of the principal defendants, Joseph A. and Cyrus Barker; nor does it sustain the allegations of the bill; nor would it, as against the answers of the principal defendants, and the proofs adduced by them in support of their answers, sustain the bill, if amended as proposed. Assuming that the alleged agreement, set up in the original bill, did not embrace the " east small garden," and that Cyrus Barker afterwards yielded the use of this garden to William Peckham, who, in consideration thereof, agreed to pay $25 additional rent, and with no intent in either to rescind or abandon the alleged original agreement of 1842; and yet, not all of these allegations, if proved, show that this agreement was in force in 1860, when the bill was filed; and if not, this court cannot grant relief. Now, whether the alleged agreement of 1842 created a tenancy during the life of Cyrus, or until the farm should be sold, as claimed by the plaintiffs, or a tenancy from year to year, as claimed by the defendants, the sworn answers of the defendants deny that any agreement, entered into in 1842, was in force in 1860. It was therefore incumbent upon the plaintiffs, to prove the agreement of 1842, as alleged; and also, that it was a subsisting agreement, in full force, not abandoned, or rescinded, at the time of the filing of their bill. Upon this point, we think the plaintiffs entirely fail in proof. Without considering the strong and explicit testimony of the defendants in support of their answer, and in denial of the existence, at any time, of the agreement set up in the bill, and without considering the question of the authority of the *cestui que trust,* Cyrus, to bind the trustee; the plaintiff, W. Peckham, does not swear that the rent was raised to $125, because he was to have the use of the small garden merely, but also because

there had been a general advance in rents, and in the cost of living, since 1842 ; and he admits, that he agreed to pay $150 rent for the year 1856, although he says he did it under protest, and that similar contracts were made for the years 1857, 1858 and 1859 ; and that he was willing to renew this contract for the year 1860, but the defendants refused so to do, they claiming that still another, and a different contract, had been made and was in force, for that year. These admissions, standing alone, would seem to preclude the plaintiffs from obtaining relief, equally under the bill as it now stands, or as it would stand, if amended as proposed ; because they show, that whatever may have been the agreement of 1842, and however it may have been modified in 1852, these agreements were subsequently rescinded, and other and different contracts substituted, to which alone was the plaintiffs possession referable, after the 25th day of March, 1856.

Courts of equity may enforce the specific performance of parol contracts, notwithstanding the statute of frauds, when followed by part performance ; and, although the exercise of the power, in each case, rests not in the arbitrary, but in the sound judicial discretion of the court, regulating their action by the settled rules of equity ; they do not hesitate to exercise it, and grant reliefs, when the contract can be specifically enforced, and when the injured party, in the faith of the contract, has gone into possession, and especially if he has made improvements, so that no damages, to be recovered at law for a breach of the contract, would afford adequate redress. But the contract set up must be fair and equal, as distinguished from a hard and unconscionable bargain ; entered into by both parties deliberately and intelligently, free from fraud or misapprehension ; otherwise, it might be more inequitable to enforce it, than to leave parties to their remedies at law. And, if the contract rests in parol, all its substantial conditions of parties, subject matter, consideration, time, and part performance, should be established as alleged ; and with so much of certainty as to leave no doubt, not only what the terms of the contract are, but that the acts of performance relied upon, whether the entering into possession,

the payment of money, or the making of improvements, or all of them, were really done in the faith of the contract, and in pursuance, and only in pursuance thereof. Any rules less strict, would defeat the purposes the statute was designed to accomplish. In regard to this, Lord Redesdale, in *Lindsay* v. *Lynch*, 2 Schoales & Lefroy 4–5, justly observes, the statute has often been too much relaxed, and its objects defeated, and that possession and other acts not really referable to the alleged contract have been set up, and so pretended agreements have been enforced. When the agreement is verbal merely, and the answer denies either its existence or its partial execution, courts will require stringent proof, before they will interfere and enforce the specific performance sought; and the duty of supplying this proof, rests with the plaintiff.

Courts of equity, also, will proceed with great caution, where it appears that any considerable lapse of time has intervened between the alleged breach and the filing of the bill, especially if followed by a material change in the situation of the parties, or in the value of the property. The plaintiff should satisfactorily explain the causes of delay, and, by some proof at least, overcome the presumption thus arising that the contract has been abandoned, and that he is now seeking to enforce it, to the manifest injury and in fraud of the defendant. But no relief can or should be afforded in any case, however ample and conclusive may be the proof upon all the other points, unless the plaintiff shows that the agreement upon which he relies, and which he is seeking to enforce, is a subsisting contract, in full force, not abandoned, or rescinded, at the time of the filing of his bill:—without this no cause of action exists, and of course, no part performance can be shown. Courts of equity do not, any more than courts of law, make new, or revive old contracts; this is the business of the parties themselves.

Without considering, therefore, whether the alleged new matter, proposed to be set out by way of amendment, was known to the plaintiffs when they filed their bill; or whether the motion to amend comes too late, as made after issue taken and trial had; if our view of the evidence, and of the rules of equity

which govern it, are correct, the motion to amend must be denied; because the hypothesis of the plaintiffs, that the alleged contract was entered into in 1842, and was modified by consent in 1852, and was, and is, in full force and obligatory upon the defendants in 1860, and now, is not only contradicted by the sworn answers, and also by all of the testimony adduced on the part of the defendants, but is also entirely inconsistent with the repeated acts and admissions of the principal plaintiff, William Peckham.

The alleged original contract was a verbal one. It is said to have been entered into in 1842, more than seventeen years before the filing of the bill; to have been modified in 1852, and broken in the autumn of 1855, or in the spring of 1856. The bill is not filed until April, 1860. No explanation of this delay, consistent with the plaintiffs' present claim, is given, or sought to be given. In the mean time, the value, and the rental value, of the property, had been enhanced. It no where appears that any one of the defendants, at any time, themselves understood they had entered into any such contract as is set out in the original bill, or as is proposed to be set out in the bill, if amended. The alleged improvements are not of a permanent nature, or of great value. The possession, and the making of these improvements, are as consistent with a tenancy from year to year, between members of the same family then sustaining friendly relations, as with a tenancy to terminate when the farm should be sold. The improvements are of such a character, that they may be removed without detriment to the estate, and without any such injury to the plaintiffs, that damages at law may not afford a full and adequate compensation. Under these circumstances, and upon the proofs before adverted to, submitted upon the principal issue, we decline longer to withhold, from the defendant trustee, possession of the premises under his judgment at law.

The motion of the defendants, that execution may issue upon their judgment at law, is allowed.

The motion of the plaintiffs, to amend, is denied.