DOROTHY S. MATARESE *vs.* EARL S. MATARESE *et al.*

MAY 28, 1954.

PRESENT: Flynn, C. J., Baker, Condon and O'Connell, JJ.

FLYNN, C. J.   This is a bill in equity seeking to impress a trust upon certain real estate and in effect to enforce either an alleged parol gift or agreement involving the conveyance of a joint interest therein.   After a hearing in the superior court on bill, answer and proof, a decree was entered denying and dismissing the bill of complaint.   The cause is before us on the complainant's appeal from such decree.

The complainant is the widow of Vincent P. Matarese, who died intestate July 4, 1945.   The respondents are Earl S. Matarese and Frank P. Matarese, who are the only children of said Vincent by a prior marriage, and their respective wives, Hazel Matarese and Monica F. Matarese.   It appears that complainant also was previously married to Henry K. Brownell, who died in June 1935.   She was de-

voted to her two minor children of that marriage and worked at various occupations to support them. In July 1942 Vincent was divorced from his former wife Ethel May Matarese and a property settlement was made in lieu of alimony and other claims by her.

The complainant and Vincent became engaged in October 1943 and were married December 14, 1944. The transactions here involved took place in 1944 prior to the marriage. The complainant testified that she was interested in security for herself and her two children; that when she and Vincent became engaged he promised to establish her in her own home and to adopt her children, if she would permit, so that they might also be his heirs; and that in contemplation of marriage they looked for a place to buy.

A suitable house at 169 Bluff avenue, Cranston, Rhode Island, was located and on February 19, 1944 a conveyance thereof was taken in the name of Vincent. The complainant testified that at the real estate office he wanted to put her name on the deed as joint tenant but because of proprieties, since they were not yet married, the title was taken in his name alone. At that time, however, he expressed his intention to place her name on the deed as joint tenant upon their marriage, the date for which was not then fixed.

Because of existing rental regulations, possession of the house was not obtained from the tenant until November 8, 1944. Shortly thereafter, on November 11, Vincent together with complainant and her mother visited the property to survey the need for alterations and repairs. In relation to that visit, complainant testified: "He [Vincent] told me then, he said, 'Dorothy, this is our house, I'm giving it to you now. As long as we're going to be married I'm giving you an interest in this house, joint tenant with me. If anything happens to either one of us the other will always have a home.'"

Following that visit complainant gave up her regular work and did considerable cleaning and preparing of the

house for structural alterations, which were performed by a hired carpenter. The complainant testified that her work included tearing down partitions, breaking plaster, cleaning, painting and papering many rooms and hallways; that the house was ready for occupancy on December 12; that she and Vincent fixed December 14, 1944 as the date for their marriage; and that after their marriage they, together with complainant's two children, moved into the house. No deed, however, was ever prepared or delivered to carry out Vincent's earlier promise or intention, and he died suddenly on July 4, 1945 without leaving any written evidence of the conveyance claimed by complainant.

In an effort to corroborate complainant's contention, several witnesses were presented. Her mother, who had accompanied complainant and Vincent on their visit to the property on November 11, did not hear Vincent's declaration or promise to complainant as the latter had testified. However, she stated that Vincent on that date told her: "Ma, you don't have to worry. Dorothy will always have a home; I'm buying the house for Dorothy, you'll never have to worry, she will always have a home."

Two other friends of complainant, Mrs. Ann B. Battey and Mrs. Hazel C. Balme, also testified to certain statements by Vincent before his marriage to complainant. The former related that Vincent told her: "This is Dorothy's house and we just fixed it all up," while Mrs. Balme testified that he said to her: "Hazel, I have given this house to Dot as a wedding gift so that she and her children will always have a home, because I have given my first wife and her two children a home, and I have given this one to Dot." Vincent's brother Arthur Matarese also testified to the effect that Vincent told him he was about to get married; that he had bought a home on Bluff avenue; and that he and complainant were to be partners in the property.

In addition to these, three witnesses testified to similar statements by Vincent after the marriage. Abram Halpert

who worked with him in a furniture store testified generally that after Vincent married complainant he told the witness that he was giving the Bluff avenue property to his wife as a wedding present. Mrs. Anna DeFusco, a sister of Vincent, testified that there was no close relationship between Vincent and the respondents, and further that in her presence, after his marriage, Vincent had said to his mother: "Ma, I gave the property to Dotty." Mrs. Mary Capasso, another sister of Vincent, testified that he was heartbroken over his treatment by respondents and had told her that he, Vincent, had given Dorothy the house as a gift.

On the other hand respondents were not in a position to specifically deny the conversations and statements alleged to have been made by Vincent to the complainant and the other witnesses in her behalf. But they testified that there was a close and friendly relationship between themselves and their father; and that they were accustomed to visit with him, although not at their home for obvious reasons. The carpenter, who was hired to make the alterations in the Bluff avenue property, testified that complainant did not do the heavy work as she testified; that she merely came during the evening and did some cleaning; and that the heavy work, such as breaking plaster and removing partitions, was a man's job and was not done by her. Much other testimony was introduced, some of which was immaterial, and some bearing on the credibility of the witnesses, the weight of complainant's testimony, and to point up the question of law relied upon by the special plea of respondents, namely, the statute of frauds.

The trial justice found on the evidence that Vincent had intended to make the complainant a joint tenant but only upon the event of their marriage, and that in the main Vincent's declarations as to the property and the conveyance of an interest therein were prospective and did not concern a present intent to make a conveyance of a joint interest to complainant. He expressly recognized that complainant

testified that Vincent on November 11, 1944 had said that he was then giving her an interest in the property as joint tenant. However, he concluded that this was highly improbable in view of the fact that at the time they were neither married nor had the date for the marriage then been set. He therefore found as a fact that Vincent did not make the particular statement as testified to by complainant.

In the circumstances he apparently felt that in any event complainant had not established by clear and convincing evidence the existence of a present intent to make a parol gift of a joint interest in the real estate, but that she had established at most an intention on the part of Vincent to eventually, after they were married, place her name on the deed as a joint tenant for the protection of her and her children.

The complainant under her reasons of appeal makes several arguments but in essence they all relate to the underlying contentions that the evidence as to the alleged conveyance of a joint interest in the property is undisputed; that this evidence was misconceived by the trial justice in reaching his conclusion that all the evidence as to Vincent's intention was in effect prospective rather than present; and that this court is in as good a position as the trial justice to draw inferences therefrom.

On those premises it is further argued that the inferences from the undisputed testimony which this court may and should deduce show that there was an agreement in contemplation of marriage, followed by part performance by complainant; that this conclusion would take the agreement out of the statute of frauds or at least would estop respondents from raising that statute; that in any event such evidence would show a gift *in praesenti* of a joint interest in the property in contemplation of marriage, not in consideration thereof; and that such a gift did not come within the statute.

It is true that this court may be in as good a position as the trial justice to draw inferences from evidence which is

16

not disputed. *Bagley* v. *Page*, 57 R. I. 186, 191; *Stiness* v. *Brennan*, 51 R. I. 284; *Caswell* v. *Westlake*, 47 R. I. 411, 414. In our opinion, however, the evidence here when considered as a whole is not entirely undisputed. Naturally there is no specific contradiction of alleged statements by Vincent to complainant and certain witnesses, since none of the respondents or their witnesses was present. But there are other facts in evidence from which the trial justice could draw inferences which are inconsistent with complainant's testimony as to her performance under the agreement in contemplation of marriage and as to the alleged gift *in praesenti* of a joint interest in the realty. We therefore have to consider merely whether the trial justice misconceived material evidence and whether his decision on conflicting evidence was clearly wrong.

We do not agree that he misconceived complainant's evidence as she contends. Her testimony as to Vincent's statement at the time the house was purchased clearly indicated a promise in whole or in part in consideration of the prospective marriage. Such an agreement would be governed by the principle enunciated in *Hutnak* v. *Hutnak*, 78 R. I. 231. Further in order to establish that complainant's part performance takes the alleged agreement out of the statute of frauds, it was necessary to show that the performance was exclusively referable to the contract itself. See *Peckham* v. *Barker*, 8 R. I. 17, and *Mann* v. *McDermott*, 77 R. I. 142. In our opinion the relevant evidence for complainant on that issue was conflicting and in the circumstances we cannot say that the trial justice was clearly wrong in holding in effect that under G. L. 1938, chap. 481, §1, the agreement had to be in writing.

As to the issue of an alleged gift *in praesenti* of a joint interest, it is true that complainant's testimony is not specifically contradicted. On the other hand it is not expressly corroborated by any of complainant's witnesses. Their evidence does not support a specific intent to make a present

gift of a joint interest as claimed by complainant. In general their testimony as to Vincent's statements is as consistent with an intent to provide a home and security for complainant *after* marriage as it might be with complainant's contention that it concerned a gift before or in contemplation of marriage.

Moreover the trial justice did not overlook complainant's testimony as to Vincent's alleged statement on November 11 but expressly referred to it. Apparently he felt that in the circumstances such a statement was highly improbable and therefore he expressly found it was not so made. In evaluating that testimony he evidently had in mind certain other inconsistent facts. Only a short time previously, complainant was not willing to have her name on the deed because they were not yet married, whereupon Vincent had promised to give a joint interest to her in the future when they were married. Nevertheless it is alleged that subsequently without being married and without having set the date therefor, he intended to divest himself *in praesenti* of his exclusive ownership of the property. No reason or new circumstance warranting or explaining such a change of intent appears in the evidence. Her rejection of the original offer because of proprieties would still be operative since they were not married at that time.

Furthermore, if either or both decided not to marry, the gift nevertheless would have been completed according to complainant's theory. But this appeared to the trial justice to be unusual and improbable in view of complainant's testimony that Vincent originally intended and promised to make the gift upon their marriage. Nor was it in keeping with the fact that although Vincent lived seven months *after* the marriage, he nevertheless did not make the deed to complainant. While there is testimony from his attorney that Vincent consulted him sometime after the marriage concerning his desire to exclude respondents from obtaining any part in the Bluff avenue property, yet nowhere did he

indicate that this had been done or was to be done by a present deed. The inference is equally strong that Vincent undoubtedly contemplated a will in favor of complainant, but this would not have supported complainant's claim that the gift was to operate *before* the marriage.

In the light of all the inconsistent facts concerning Vincent's conduct before and after the alleged gift on November 11, 1944, we cannot say that the trial justice was clearly wrong in concluding that complainant had not sustained her burden of establishing by convincing evidence the existence of an intent to make a present parol gift of a joint interest in the realty.

The complainant's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court.

*Philip S. Knauer, Jr.,* for complainant.

*John DiLibero,* for respondents.